UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ALASKA REEFER MANAGEMENT LLC

    Plaintiff,

v.

NETWORK SHIPPING LIMITED

    Defendant.

--------------------------------------------------------------X

14 cv 3580 (JFK)

## NETWORK SHIPPING LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO VACATE RULE B ATTACHMENT

Dated: New York, New York
      May 27, 2014

                           **CASEY & BARNETT, LLC**
                           Martin F. Casey
                           Attorneys for Defendant
                           65 West 36th Street, 9th Floor
                           New York, New York 10018
                           (212) 286-0225

# TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………….. ii

PRELIMINARY STATEMENT …………………………………….. 1

BACKGROUND …………………………………….. 1

LEGAL ARGUMENT …………………………………….. 3

POINT I

SUMMARY OF ARGUMENT …………………………………….. 3

POINT II

RULE B ATTACHMENT IS AN EQUITABLE REMEDY
WHICH MUST BE APPLIED AND LIMITED ACCORDING
TO ITS UNDERLYING PURPOSES …………………………………….. 3

POINT III

RULE B ATTACHMENT IS INAPPROPRIATE AND INEQUITABLE
BECAUSE NETWORK SHIPPING IS AMENABLE TO JURISDICTION
IN A CONVENIENT OR ADJACENT JURISDICTION ……………….. 6

POINT IV

THE EXISTENCE OF A LONDON ARBITRATION CLAUSE
DOES NOT VITIATE APPLICATION OF *AQUI STOLI* ………………… 10

POINT V

ANY SUBSEQUENT RULE B ATTACHMENT BY PLAINTIFF
SHOULD BE BARRED BY ALASKA REEFER'S INEQUITABLE
FAILURE TO PROVIDE PRIOR NOTICE …………………………………….. 12

CONCLUSION …………………………………………. 14

## <u>TABLE OF AUTHORITIES</u>

<u>*Cases*</u>

*Aqui Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
460 F.3d 434 (2d Cir., 2006) .......................... 3, 4, 5, 6, 8, 9, 10, 11, 12

*Atkins v. The Disintegrating Co.*, 85 (18 Wall) 272,
21 L.Ed. 841 (1874) ................................ 4

*Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*,
85 F.3d 44 (2d Cir. 1996) ................................ 4

*Cantone & Co., Inc. v. Seafrigo*, 2009 WL 210682 (S.D.N.Y., Jan 27, 2009)..... 8, 9, 10

*Emerald Equipment Leasing, Inc. v. Sea Star Line, LLC*,
2009 WL 1182575 (S.D.N.Y., May 1, 2009) ................................ 3, 7, 8, 10

*Gottlieb v. Sandia American Corp.*, 452 F.2d 510 (3d Cir., 1971) .............. 10

*Green v. Compania de Navegacion Issabella, Ltd.*,
26 F.R.D. 616 (S.D.N.Y., 1960) ................................ 10

*Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*,
476 F.Supp. 119 (S.D.N.Y., 1979) ................................ 4

*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154,
90 L.Ed. 95 (1945) ................................ 7, 9, 10

*Ivan Visin Shipping v. Onego Shipping & Chartering*, 2008 WL 839714,
reconsideration denied 543 F.Supp.2d 338 (S.D.N.Y., 2008)........................ 6, 7

*Seawind Compania S.A. v. Crescent Line, Inc.*,
320 F.2d 580 (2d Cir., 1963) ................................ 3

*Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*,
339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) ................................ 4, 5

*Swiss Marine Services, S.A. v. Louis Dreyfus Energy Services LP*,
598 F.Supp.2d 414 (S.D.N.Y., 2008) ................................7, 9, 11, 12

*Williamson v. Recovery Ltd. Partnership*,
542 F.3d 43 (2d Cir., 2008) *cert denied* 555 U.S. 1102 (2009) ................ 5

*Constitution*

Article III of the Constitution. U.S. Const. Art III, § 2 ..................... 4

*Treatise*

Wright and Miller, *Federal Practice and Procedure*, Civil 3d § 1103 ............ 10

*Rules*

Federal Rules of Civil Procedure, Supplemental Rule B ....... 1, 2, 3, 5, 8, 11, 12

Federal Rules of Civil Procedure, Supplemental Rule E ....... 4, 5, 8

Federal Rules of Civil Procedure, Rule 4 ....... 9, 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

ALASKA REEFER MANAGEMENT LLC

    Plaintiff,

v.

NETWORK SHIPPING LIMITED

    Defendant.
---------------------------------------------------------------X

14 cv 3580 (JFK)

**NETWORK SHIPPING LTD.'S
MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO
VACATE RULE B ATTACHMENT**

## PRELIMINARY STATEMENT

Defendant, Network Shipping Ltd. ("Network Shipping") submits this Memorandum of Law in Support of its motion to vacate the Rule B attachment obtained by plaintiff, Alaska Reefer Management, LLC (hereinafter "Alaska Reefer").

## BACKGROUND

The parties entered into two separate time charter parties in March 2013, one for the use of the M/V Marbella Carrier and the other for the use of the M/V Murcia Carrier by plaintiff Alaska Reefer for one voyage each. Issues arose regarding the seaworthiness of the respective vessels and plaintiff claimed that it had sustained damages as a result. The Charter Parties (annexed as Exhibits A and B to the Verified Complaint and incorporated herein by reference) provide that the charter party shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with the charter shall be referred to arbitration in London in accordance with the Arbitration Act of 1996. [Declaration of Peter Collins ¶ 3, 4 and 5].

Arbitrations in each matter were commenced by Alaska Reefer on May 7, 2013 in London and Network Shipping appeared on May 11, 2013. [Declaration of Peter Collins ¶ 6, 7].

In June 2013 Network Shipping applied to the Tribunal for an order relating to outstanding hire due and owing by Alaska Reefer and Alaska Reefer cross-claimed for security from Network amounting to US$1,275,325.35 for its claims arising under the M/V Marbella Carrier charter party and US$953,814.71 for its claims arising under the M/V Mercia Carrier charter party.

In September 2013 the Tribunal issued its awards in both arbitrations. The Tribunal granted Alaska Reefer an equitable set-off of $62,301.45 for the M/V Marbella Carrier and an equitable set-off of $29,270 for the M/V Mercia Carrier. In regard to additional security, the Tribunal stated:

> We do not think it would be appropriate to require Network to provide further security as a condition of obtaining an award which does not award them their claim for hire. We have not been asked to do so and we would be reluctant to do so in order to secure claims in respect of which Alaska Reefer have not established a good arguable case and in the absence of any evidence that an award on Alaska's counterclaims is likely to be unenforceable against Network.

[Collins Declaration ¶ 21, 24].

Following the Tribunal's Awards of September 11, 2013 Network received no further communications or correspondence from Alaska Reefer, who have, to date, neglected to submit its Claim Submissions in either arbitration. [Collins Declaration ¶ 25]. On April 4, 2014 the Tribunal issued an Order requiring Alaska Reefer to serve its Claim Submissions by close of business on May 2, 2014. [Collins Declaration ¶ 29]. After receiving a request for an extension of time from Alaska Reefer, on April 29, 2014 the Tribunal issued a further Order requiring Alaska Reefer to serve its Claim Submissions by May 30, 2014. [Collins Declaration ¶ 30]. As of today's date, Alaska Reefer has still not served its Claim Submissions on Network Shipping's counsel in London. [Collins Declaration ¶ 31].

On May 19, 2014 Alaska Reefer commenced the subject action seeking security from Network Shipping pursuant to Rule B. The application was made *ex parte* notwithstanding the

long-standing arbitration proceeding in London. Network Shipping first became aware of the existence of the subject action when its accounts at Bank of America ($164,000) and JP Morgan Chase (3,290,287.38) were attached pursuant to writs served by plaintiff's counsel, Freehill Hogan & Mahar.

## LEGAL ARGUMENT

### POINT 1

### SUMMARY OF ARGUMENT

This matter is squarely governed by the principles set forth in *Aqui Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,* 460 F.3d 434 (2d Cir., 2006)(hereinafter "*Aqui Stoli*") and its progeny, including *Emerald Equipment Leasing, Inc. v. Sea Star Line, LLC,* 2009 WL 1182575 (S.D.N.Y., May 1, 2009). Under *Aqui Stoli*, maritime attachments do not serve the purpose of Rule B and should be vacated when the Rule B defendant is amenable to jurisdiction in a convenient adjacent jurisdiction, or when both the Rule B plaintiff and defendant are present in the same jurisdiction. The first alternative exists here. Vacatur is automatically granted when the *Aqui Stoli* factors are met, and failure to vacate an attachment would be an abuse of discretion. Accordingly, rather than wasting the time and resources of the Court, the parties and innocent third party garnishees, this Court should vacate the attachment and dismiss this action.

### POINT II

### RULE B ATTACHMENT IS AN EQUITABLE REMEDY WHICH MUST BE APPLIED AND LIMITED ACCORDING TO ITS UNDERLYING PURPOSES

Rule B of the Supplemental Rules permits issuance of attachment and garnishment when a defendant is not present in a district. As was made clear in *Seawind Compania S.A. v. Crescent*

*Line, Inc.,* 320 F.2d 580, 582 (2d Cir., 1963), this means that, in order for the plaintiff to be entitled to an attachment, it can show either that the defendant is not jurisdictionally present or that the defendant cannot be served within the district where suit is commenced.

As this Court has noted, the test for the availability of maritime attachment and garnishment "is quite arbitrary in its specifications of the circumstances" in which it may be used. *Integrated Container Service, Inc. v. Starlines Container Shipping Ltd.,* 476 F.Supp. 119, 122 (S.D.N.Y., 1979).

In *Aqui Stoli,* the Second Circuit addressed the standards to be applied to a motion to vacate a Rule B attachment under Supplemental Rule E(4). The Court first examined the purposes to be served by the remedy of prejudgment attachment of assets in maritime cases:

> "[Maritime attachment is a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844." *Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.,* 85 F.3d 44, 47 (2d Cir., 1996). In fact, "[t]he use of the process of attachment in civil causes of maritime jurisdiction by courts of admiralty… has prevailed during a period extending so far back as the authentic history of those tribunals can be traced." *Atkins v. The Disintegrating Co.,* 85 U.S. (18 Wall.) 272, 303, 21 L.Ed. 841 (1874). The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution. U.S. Const. art. III. § 2. The power's historical purpose has been two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 693, 70 S.Ct. 861, 94 L.Ed. 1206 (1950).

*Aqui Stoli,* at 437-38. Applying these Rules, the Court held as follows:

> [A] district court may vacate the attachment if the defendant shows at the Rule E hearing that (1) the defendant is subject to suit in a convenient adjacent jurisdiction; (2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

*Aqui Stoli,* at 445.

4

The fundamental principal underlying the three *Aqui Stoli* exceptions is plain – a Rule B attachment is improper unless it accomplishes both purposes underlying the Rule, namely acquiring jurisdiction and obtaining security. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 693, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). The first two exceptions establish that a Rule B attachment is not available if the Rule B defendant can be conveniently sued *in personam* in a U.S. Court by the Rule B plaintiff. This effectuates the first prong of the power's "historical purpose," which is to gain jurisdiction over an absent defendant. The third exception – vacating attachment when the plaintiff is adequately secured – makes sure any attachment effectuates the second purpose of the remedy.

The defendant is entitled to contest the attachment at a prompt hearing pursuant to Rule E(4)(f). At this hearing, the plaintiff, or in this case, Alaska Reefer, has the burden of proving that it has met the requirements of Rule B.

> To avoid vacatur of attachment, it is the plaintiff's burden to show that: (1) it has a prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime bar to the attachment.

*Aqui Stoli*, *supra* 460 F.3d at 445.

Moreover, "[s]uperficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment is appropriate." *Williamson v. Recovery Ltd. Partnership,* 542 F.3d 43, 52 (2d Cir., 2008) *cert denied* 555 U.S. 1102 (2009). Instead, "[w]here a defendant contests an attachment of its property under Rule E(4)(f), plaintiffs must demonstrate at the Rule E hearing why the attachment should not be vacated." *Williamson, supra* at 52.

Application of these rules leads to the conclusion that any attachment in this action is improper, inequitable and ineffective.

## POINT III

## RULE B ATTACHMENT IS INAPPROPRIATE AND
## INEQUITABLE BECAUSE NETWORK SHIPPING IS AMENABLE
## TO JURISDICTION IN A CONVENIENT OR ADJACENT JURISDICTION

The first *Aqui Stoli* exception provides that the attachment should be vacated when the Rule B defendant is subject to suit in a "convenient adjacent jurisdiction." The Court of Appeals described the issue as one involving the "convenience" to the plaintiff of pursuing the defendant *in personam* in a jurisdiction that was not geographically "remote." The Court noted that when a defendant could be sued "across the river" in the Eastern District of New York but attachment had been obtained in the Southern District, the case presented "a paradigmatic example of a case where an attachment should be vacated." *Aqui Stoli* at 444. The Court found "less clear" whether an attachment should be vacated when "the adjacent jurisdiction is more remote and therefore less obviously 'convenient' to the plaintiff." *Aqui Stoli, supra.*

In applying this rule, the jurisdictional presence of a Rule B defendant in the District of New Jersey is also a "paradigmatic" application of an "across the river" case under *Aqui Stoli*. In *Ivan Visin Shipping v. Onego Shipping & Chartering,* 2008 WL 839714, 2008 A.M.C. 1760, *reconsideration denied* 543 F.Supp.2d 338 (S.D.N.Y., 2008) , Judge Rakoff was presented with a case in which the Rule B defendant's general agent was doing business in New Jersey and was subject to service in that District. In evaluating the convenience of New Jersey as an alternative forum for the Rule B plaintiff, Judge Rakoff found the issue clearly controlled by *Aqui Stoli*:

> The instant case is just such a "paradigmatic," "across the river" case where the attachment should be vacated. Defendant is subject to in personam jurisdiction in the District of New Jersey, which is across the Hudson River from the Southern District of New York. Moreover, plaintiff, a foreign business authorized under the laws of a foreign country with an address in the Marshall Islands, see Verified Complaint ¶ 2, provides no evidence that New Jersey is any less convenient to it than New York.

*Id.*, 2008 WL 839714 at *4.

The Court vacated the attachment and ordered the parties to confer on the dismissal of the case.

A similar result was reached regarding a defendant present in Connecticut in *Swiss Marine Services, S.A. v. Louis Dreyfus Energy Services LP,* 598 F.Supp.2d 414 (S.D.N.Y., 2008). The Rule B defendant in this case was an international energy company with its principal North American office in Wilton, Connecticut. Judge Sand held that although Connecticut is not "across the river" in a literal sense like the Eastern District or the District of New Jersey, the District of Connecticut nonetheless was "adjacent" and was no more inconvenient to the Rule B plaintiff than the Southern District. *Id.* at 418. In evaluating the plaintiff's arguments that Wilton was too far (60 miles from Manhattan) and too inaccessible to be convenient, Judge Sand note the availability of electronic filing, service by mail, and appearances by counsel *pro hac vice* would eliminate any potential inconvenience. *Id.* at 418-19.

The Court went on to evaluate whether the District of New Jersey was also a convenient adjacent jurisdiction, as Louis Dreyfus argued that it was present in both Connecticut and New Jersey. Noting that Louis Dreyfus did not have a physical office in New Jersey, the Court stated:

> the appropriate inquiry is not based solely on whether a defendant maintains a physical office, but on whether a defendant maintains sufficient contacts with the forum state so that a finding of jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*Id.* at 419. The Court vacated the attachment and dismissed the complaint, since attachment was the only basis for jurisdiction. *Id.* at 422.

A further confirmation that the defendant's presence in an adjacent jurisdiction defeats a Rule B attachment is found in *Emerald Equipment Leasing, Inc. v. Sea Star Line, LLC,* 2009 WL

1182575 (S.D.N.Y., May 1, 2009). In *Emerald Equipment*, defendant Sea Star Line demonstrated that it was subject to general jurisdiction in New Jersey in that it "maintains continuous and systematic business contacts with New Jersey." Sea Star Line opened an office in New Jersey in May 2002 and that this office had been open continuously since that time. The work done in the New Jersey office was associated with annual revenues of approximately $10 million for the defendant. *Id.* at *3. Plaintiff argued that the rule was inapplicable in this case because it was precluded from commencing an action in New Jersey against Sea Star Line because of the "first filed rule." Judge Koetl dismissed this argument as follows:

> In any event, the plaintiff's ability to pursue a suit on the merits against the defendant in New Jersey is beyond the scope of the convenient adjacent jurisdiction inquiry contemplated by *Aqui Stoli*. That inquiry is limited to whether the defendant is subject to personal jurisdiction, including service of process, in an adjacent district that is geographically convenient. [citations omitted]. Courts have repeatedly described the convenient adjacent jurisdiction inquiry in strictly jurisdictional terms, without any mention of whether bringing a suit on the merits is actually plausible. [citation omitted].

*Id.* at *4.

The Court held that the defendant has demonstrated a basis for equitable vacatur pursuant to *Aqui Stoli* on the grounds that it is subject to suit in a convenient adjacent jurisdiction. *Id.* at *4.

In *Cantone & Co., Inc. v. Seafrigo*, 2009 WL 210682 (S.D.N.Y., January 27, 2009), defendant sought to vacate an attachment of its assets in New York on the basis that a subsidiary of its corporate group, Seafrigo USA, Inc. had an office in New Jersey and that it was therefore located in a convenient adjacent jurisdiction. Judge Leisure found that Seafrigo USA operates as defendant's local agent, such that defendant would be subject to jurisdiction in New Jersey for purposes of Supplemental Admiralty Rules B and E. *Id.* at *5. In vacating the attachment, the Court held:

> [A]lthough plaintiff does not argue that the District of New Jersey is an obviously less convenient jurisdiction for plaintiff, see *Aqui Stoli*, 460 F.3d at 444, the Court nevertheless notes that the District of New Jersey fits the Second Circuit's description of a convenient adjacent jurisdiction. *Id.* In reaching this conclusion, this Court agrees with Judge Sand's analysis of the concept of "convenience" in *Swiss Marine Servs. S.A. v. Louis Dreyfus Energy Servs, LP*. No. 08 Civ. 7981 (LBS), 2008 WL 4906137 at *5 (S.D.N.Y. Nov 17, 2008). In *Swiss Marine*, based on a textual reading of Rule B and *Aqui Stoli*, Judge Sand concluded that "convenience" refers to "geographic proximity" and that the Second Circuit intended for district courts to consider "whether the physical distance of an adjacent jurisdiction renders it so less obviously convenient to plaintiff that the Court could not equitably vacate the attachment." *Id.*
>
> The Court also agrees with Judge Rakoff's conclusion in *Ivan Visin Shipping* that the convenient adjacent jurisdiction need not be in the same states as the attaching district. 543 F.Supp.2d at 340 ("Aqui Stoli did not state that such [a "paradigmatic example"] could not extend to the District of New Jersey")[citations omitted].

*Id.* at *6.

In determining whether a defendant is "present" in the adjoining jurisdiction, the Court employs the same test used to determine if a defendant is "present" in the District when considering the issuance of a Rule B attachment. There are two components to the test. First, the Court determines if the defendant is subject to in personam jurisdiction in the relevant forum, applying the traditional "due process" rule – whether the defendant maintains sufficient contacts with the forum state so that a finding of jurisdiction would not offend "traditional notions of fair play and substantial justice." *Swiss Marine, supra* at *5, citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, the Court must establish that there is a person in the District at issue who is authorized to accept service of process on behalf of the Defendant under Fed.R.Civ.P, 4. *Id.*

As set forth in the Declaration of Helmuth Lutty, Network Shipping is clearly present in New Jersey under both elements of the test. Network Shipping has maintained a continuous and substantial business presence in New Jersey for over 23 years with at least one vessel calling at

the Port of Gloucester, New Jersey on a weekly basis since 1990; it generates substantial revenue in the State through its vessel calls at the port with both import and export cargo and it has done so for years. The Courts in *Emerald Equipment, supra*, in *Cantone, supra,* and in *Green v. Compania de Navegacion Issabella, Ltd.*, 26 F.R.D. 616 (S.D.N.Y., 1960) each found that similar activities by the defendants in those cases satisfied the requirements for *in personam* jurisdiction as set forth in *International Shoe*.

Network Shipping also has an agent in New Jersey who can be served with process. Fed.R.Civ.P. 4(h)(1)(B) permits process service on a corporate defendant to be effected by delivery of the summons and complaint to, *inter alia*, "a managing or general agent." Such a person must be one of sufficient responsibility so that it is reasonable to assume that the person will transmit notice of the commencement of the action to organizational superiors. See *generally*, Wright and Miller, *Federal Practice and Procedure*, Civil 3d § 1103. The undisputed evidence is that Del Monte's terminal manager, Ernie Casper, and constitutes a "managing or general agent" of Network Shipping within the meaning of Rule 4. See, *Gottlieb v. Sandia American Corp.*, 452 F.2d 510 (3d Cir., 1971).

## POINT IV

### THE EXISTENCE OF A LONDON ARBITRATION CLAUSE DOES NOT VITIATE APPLICATION OF *AQUI STOLI*

Inasmuch as Network Shipping is jurisdictionally present in New Jersey and has an agent who can be served in that state, the only remaining issue is whether there is some reason that the existence of such a "paradigmatically convenient" forum would not result in the application of the first *Aqui Stoli* exception. In the within matter, the parties agreed that any disputes arising under the governing charter party would be subject to arbitration in London. The fact that Alaska

Reefer is barred from pursuing its claims against Network Shipping in New Jersey, or for that matter in Delaware, does not bar the application of *Aqui Stoli*.

Judge Sand evaluated this issue in detail in *Swiss Marine, supra,* where, like here, the claims of the parties were subject to an arbitration clause requiring resolution of the underlying issues in London. Judge Sand first noted that the text of Rule B and the emphasis on "remoteness" in *Aqui Stoli* established a standard based on convenience in the geographic sense. *Swiss Marine,* 2008 WL 4906137 at \*3. The Court then noted that the primary purpose of Rule B has been to "obtain an appearance" of a defendant who has concealed himself, or absconded. *Id.* Thus, where a defendant can be found in the attaching district, Rule B specifically prohibits attachment because "the ability of the court to exercise *in personam* jurisdiction over the defendant satisfies the plaintiff's need for assurance that it will be able to call the defendant into court to satisfy a judgment." *Id* at 421. This is true regardless of whether or not the underlying issues are subject to arbitration or some other basis for avoiding suit. Thus, "the availability of an immediate suit on the merits is not the lynchpin in evaluating attachment and vacatur." *Id.* at 421, note 8. That is because the drafters of Rule B made a policy judgment that jurisdictional presence of a defendant is "adequate assurance for the plaintiff that it will be able to find the defendant to satisfy a judgment." *Id.*

> The same rule and rationale obtains in convenient, adjacent districts:
>
> This reasoning applies equally in the situation where a defendant is jurisdictionally present in a convenient adjacent district. When a defendant can be found in a convenient adjacent jurisdiction –when it transacts sufficient business, has an office, officers, assets, or some combination thereof – the defendant is not peripatetic and the plaintiff is not entitled to an attachment.

*Id.* at 421, note 8. While this may appear unfair from the perspective of a Rule B plaintiff, it is inherent in the nature and the language of Rule B:

We recognize that a plaintiff who cannot attach assets because the Rule B requirements are not met, and yet is unable to bring the suit on the merits because of a choice of forum or arbitration clause in its contract, may have a need for security. Judge Leval recognized the dilemma in *Integrated*, when he said of the two-pronged Rule B test:

This test amounts to a somewhat arbitrary compromise which assumes that the plaintiff will not require the protection of an attachment for security … if the defendant is present … and assumes on the other hand that the plaintiff's interests are not adequately protected despite the ability to perfect *in personam* jurisdiction if the defendant is not present in both senses.

476 F.Supp. at 122. The Court of Appeals found, however, that "Congress chose a determinate rule rather than a flexible standard" in setting the requirements for Rule B, and this Court is bound by that rule. *Aqui Stoli*, 460 F.3d at 443. If there is a shortcoming, then, it originates with the requirements for attachment under Rule B.

*Id.*

There is no question that under Rule B, Alaska Reefer is not entitled to attachment in this District if Network Shipping is present here. That rule reflects the policy judgment of the drafters of the Rule that presence is sufficient to provide security. *Aqui Stoli* extended that same policy to adjacent convenient districts.

## POINT V

### ANY SUBSEQUENT RULE B ATTACHMENT BY PLAINTIFF SHOULD BE BARRED BY ALASKA REEFER'S INEQUITABLE FAILURE TO PROVIDE PRIOR NOTICE

It is undisputed that Alaska Reefer did not provide Network Shipping with notice of this lawsuit (which was filed on May 19, 2014); did not notify Network Shipping's counsel that it had been filed; and did not make an appropriate inquiry to determine whether Network Shipping was subject to jurisdiction in an adjacent convenient jurisdiction. Network first received notice of the lawsuit on Thursday afternoon May 22, 2014 when it learned that one of its accounts in New

York had been attached. It appears that this was all for perceived tactical advantage – to improperly seize Network Shipping's property prior to Alaska Reefer filing its long-delayed Claim Statement with the arbitration panel in London. This notwithstanding the Arbitration Tribunal's refusal to grant Alaska Reefers request for security due to its failure to substantiate its claims in September 2013. By doing so, Alaska Reefer no doubt hoped to exert the maximum possible leverage on Network Shipping.

Alaska Reefer may hope that the Court does not inquire why attachment was appropriate in light of the fact that the parties were already litigating the merits in London the agreed upon forum for this dispute; and that Alaska Reefer had already made a claim for security and that the claim had been partially denied by the Arbitration Panel due to the failure of Alaska Reefer to provide any support for its claim for damages. Such conduct would violate the purpose and spirit of Rule B and the *ex parte* procedure set forth therein. When a transitory defendant cannot be found, it is perfectly understandable that a Rule B plaintiff will proceed without notice. When the Rule B defendant is litigating the issues with the Rule B plaintiff, knows their opposing counsel, and knows that a potentially case dispositive issue is present, the tactic of approaching the Court *ex parte* should be examined more closely.

## CONCLUSION

It is respectfully submitted that the attachments and attachment order against Network Shipping in this case should be vacated and the action dismissed since the action is concededly subject to arbitration in London and there is no other apparent purpose for the action other than to obtain Rule B security.

Dated: New York, New York
      May 27, 2014

Respectfully submitted,

**CASEY & BARNETT, LLC**
Attorneys for Defendant
Network Shipping Ltd.

By:     *Martin F Casey*

Martin F. Casey
65 West 36th Street, 9th Floor
New York, New York 10018
(212) 286-0225
mfc@caseybarnett.com