USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 16, 2014

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------X
ALASKA REEFER MANAGEMENT LLC, :
                              :
            Plaintiff,        :
                              :          No. 14 Civ. 3580 (JFK)
     -against-                :             **OPINION & ORDER**
                              :
NETWORK SHIPPING LIMITED,     :
                              :
            Defendant.        :
-------------------------------X

Appearances

For Plaintiff Alaska Reefer Management LLC
     FREEHILL HOGAN & MAHAR, LLP
     By:  Don P. Murnane, Jr.
          Manuel A. Molina

For Defendant Network Shipping Limited
     CASEY & BARNETT, LLC
     By:  Martin F. Casey


**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Network Shipping Limited's

motion to vacate the Rule B attachment entered in this matter on

May 20, 2014.  For the reasons that follow, Defendant's motion

is denied and the attachment will remain in effect.  This

Opinion contains no ruling on Defendant's motion for

countersecurity, which has not yet been fully briefed.

### I.   Background

Plaintiff Alaska Reefer Management LLC is organized under

Washington law, and has its principal place of business in

Seattle.  Plaintiff alleges that Defendant Network Shipping is a

Bermuda entity with an office in Coral Gables, Florida.  On March 15, 2013, Plaintiff chartered two vessels owned by Defendant, the M/V Marbella Carrier and the M/V Murcia Carrier, for the purpose of transporting frozen fish from Alaska to Canada, Germany, and the Netherlands.  Defendant delivered the Marbella and the Murcia into Plaintiff's service in Hong Kong on March 17 and March 23, respectively, and they each left for Dutch Harbor, Alaska. (Compl. ¶¶ 2-5, 29-30.)

Plaintiff alleges that both vessels developed engine problems and other mechanical failures that caused myriad delays, lost cargo capacity, various expenses, and loss of business.  Plaintiff claims that it incurred damages of over $1.65 million plus interest as to the Marbella, and over $830,000 plus interest as to the Murcia.  The charter agreement between the parties specifies that disputes be referred to arbitration in London, which Plaintiff did.  That process is ongoing. (Id. ¶¶ 6-49.)

Plaintiff initiated the instant action for the purposes of securing Defendant's assets under Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims ("Rule B"). Plaintiff made an ex parte Rule B application for the attachment of $3,290,287.38, which is the sum of its estimated damages, interest, and attorney's fees.  This Court granted the

application on May 20, 2014, and Defendant moved to vacate the

attachment one week later.  A hearing on the matter was held on

June 5, 2014.

## II.  Discussion

### A.    Rule B Legal Standard

Rule B states, in pertinent part, that "[i]f a defendant is

not found within the district when a verified complaint praying

for attachment and the affidavit required by Rule B(1)(b) are

filed, a verified complaint may contain a prayer for process to

attach the defendant's tangible or intangible personal property—

up to the amount sued for." Fed. R. Civ. P. Supp. Rule B(1)(a).

The rule is a modern extension of the "ancient practice" of

maritime attachment, which historically served to "relieve a

plaintiff of the burden of scouring the globe to find a proper

forum for suit." Aurora Mar. Co. v. Abdulla Mohamed Fahem & Co.,

85 F.3d 44, 47–48 (2d Cir. 1996); Swiss Marine Servs. S.A. v.

Louis Dreyfus Energy Servs. L.P., 598 F. Supp. 2d 414, 422

(S.D.N.Y. 2008).

The supplemental admiralty rules further provide that a

party with an interest in property that has been attached under

Rule B is entitled to a prompt hearing to determine whether the

attachment should be vacated. See Fed. R. Civ. P. Supp. Rule

E(4)(f).  Upon a defendant's motion to vacate a Rule B

attachment, the plaintiff must show "that (1) the plaintiff has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime bar to the attachment." See Aqua Stoli Shipping Ltd., v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006), abrogated on other grounds by Shipping Corp. of India v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009); see also British Marine PLC v. Aavanti Shipping & Chartering Ltd., No. 13 Civ. 839, 2013 WL 6092821, at *2 (E.D.N.Y. Nov. 19, 2013).

The Second Circuit has also stated that vacatur is appropriate where a defendant shows that it is subject to suit in a convenient adjacent jurisdiction. Aqua Stoli, 460 F.3d at 445 & n.5 (noting that defendant bears this burden). Accordingly, courts in this district have vacated Rule B attachments where the defendant was subject to suit in such jurisdictions as the Eastern District, the District of Connecticut, and the District of New Jersey. Id. at 444; Swiss Marine Servs., 598 F. Supp. 2d at 418–19; Ivan Visin Shipping Ltd. v. Onego Shipping & Chartering B.V., 543 F. Supp. 2d 338, 339–40 (S.D.N.Y. 2008).

## B.   Analysis

Defendant does not argue that Plaintiff has failed to meet any of the four Rule B requirements.  Indeed, Plaintiff has satisfied its burden of showing that (1) it has a valid prima facie admiralty claim against Defendant, as set forth in the complaint; (2) Defendant cannot be found within the district, which Defendant does not dispute; (3) Defendant has property in the district (which has been attached[1]); and (4) there is no statutory or maritime bar to the attachment.

Rather, Defendant's rationale for vacatur is solely that it is amenable to suit in the District of New Jersey, which has been recognized as a "convenient adjacent jurisdiction."[2] Whether a defendant may be "found" in a district for the purposes of Rule B is a two-pronged inquiry:  "first, whether it can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." E.g., United States v. Cia. Naviera Cont'l S.A., 178 F. Supp. 561, 563 (S.D.N.Y. 1959).  These prongs are discussed in turn.

---

[1] There is apparently some question as to whether the attached funds actually belong to Defendant. (Ans. of JPMorgan Chase Bank, N.A. ¶¶ 4-7.)  That issue may well need to be addressed, but it is not relevant to the Court's resolution of the instant motion.

[2] Defendant has withdrawn its other arguments regarding the propriety of Plaintiff's Rule B application. (Oral Arg. Tr. at 12.)

### 1.    The Jurisdictional Prong

Defendant will satisfy this burden if it shows that it is

subject to <u>in personam</u> jurisdiction in New Jersey — that is, if

it maintains sufficient contacts with the state so that the

exercise of jurisdiction would not violate "traditional notions

of fair play and substantial justice." <u>Int'l Shoe Co. v. Wash.</u>

<u>Office of Unemployment Comp. & Placement</u>, 326 U.S. 310, 316

(1945); <u>see</u> <u>Emerald Equip. Leasing, Inc. v. Sea Star Line, LLC</u>,

No. 08 Civ. 10672, 2009 WL 1182575, at *3 (S.D.N.Y. May 1,

2009).  Because the subject matter of this action is unrelated

to Defendant's contacts with New Jersey, Defendant must

demonstrate general jurisdiction, which requires "continuous and

systematic general business contacts" with the state. <u>Metro.</u>

<u>Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 568 (2d Cir.

1996); <u>see</u> <u>Emerald Equip. Leasing</u>, 2009 WL 1182575, at *3.

To help satisfy this burden, Defendant may point to "the

contacts and actions of its agents." <u>Ivan Visin Shipping Ltd. v.</u>

<u>Onego Shipping & Chartering B.V.</u>, No. 08 Civ. 1239, 2008 WL

839714, at *2 (S.D.N.Y. Mar. 31, 2008) (citations and internal

quotation marks omitted); <u>see also</u> <u>Sablic v. Croatia Line</u>, 719

A.2d 172, 174 (N.J. Super. Ct. App. Div. 1998) ("Substantial

continuous activity within the state by one corporation acting

as agent for another authorizes the courts of the state to

exercise general in personam jurisdiction over the principal.").

However, it is not enough to show that Defendant's agents

transacted some business in New Jersey. Swiss Marine Servs., 598

F. Supp. 2d at 419 ("[S]ales transactions alone do not rise to

the level of 'continuous and systematic' activity that is

necessary for the exercise of general in personam jurisdiction

to enforce a cause of action not arising out of [Defendant's]

activities in New Jersey.")  Moreover, Defendant must

demonstrate that Plaintiff "could reasonably have been expected

to know the agent's identity." Siderbulk, Ltd. v. M/S Nagousena,

No. 92 Civ. 3293, 1992 WL 183575, at *1 (S.D.N.Y. July 23,

1992).

    Defendant has no office or employees in New Jersey.

Indeed, it represented in a 2011 filing to the New Jersey

Division of Revenue that it "is not transacting business

activities" there and that it "surrenders its authority" to do

so. (Molina Supp. Dec. Ex. C.)  Nevertheless, Defendant now

claims to this Court that it "has maintained a continuous and

substantial business presence in New Jersey for over 23 years,

with vessels calling there and substantial revenue generated

regularly." (Def. Br. at 9-10.)  A declaration by Helmuth Lutty,

Defendant's Vice President of Shipping Operations, states that

Defendant does business in New Jersey "through its affiliated

company, Del Monte Fresh Produce N.A., Inc.," ("Del Monte") and

"through its agent, General Steamship Corporation." (Lutty Dec.

¶ 2.)  Lutty states that Defendant and Del Monte are affiliated

because "both are indirectly owned by the ultimate parent

company, Fresh Del Monte Produce Inc." (Id. ¶ 3.)

Defendant's showing on this point fails for three reasons.

First, even if it is true that Defendant's ships call at New

Jersey ports and generate a modicum of revenue thereby, this

alone does not suffice to confer general personal jurisdiction

over Defendant. See Swiss Marine Servs., 598 F. Supp. 2d at 419–

20.  "The standard for general jurisdiction is demanding,

because a defendant subject to general jurisdiction in a state

may be haled into court to answer for any alleged wrong,

committed in any place, no matter how unrelated to the

defendant's contacts with the forum." Jenkins v. Miller, ---

F. Supp. 2d ----, 2013 WL 5770387, at *8 (D. Vt. 2013) (internal

quotation marks omitted); accord Leja v. Schmidt Mfg., Inc., No.

01 Civ. 5042, 2005 WL 1366533, at (D.N.J. June 7, 2005)

(observing that "general jurisdiction requires a very high

threshold of business activity," and that the facts required to

establish it "must be extensive and persuasive" (citations and

internal quotation marks omitted)).  Defendant's threadbare

representations do not meet this high bar.

Second, to the extent Defendant seeks to buttress its connection to New Jersey by leaning on its purported relationships with Del Monte or General Steamship, Defendant has not shown that either entity is its general agent. See generally Restatement (Third) of Agency § 2.01 cmt. d.  Although the Court accepts Defendant's representation that it is owned by the same parent company as Del Monte, it does not necessarily follow that Del Monte's actions can be imputed to Defendant. See Ivan Visin, 2008 WL 839714, at *2.  The cases premising jurisdiction on the acts of an agent have done so upon a detailed showing regarding the course of dealings between agent and principal. See id. (observing that the agent was established for the purpose of giving the principal "a closer presence to its shippers and shipping clients in the Americas and the Caribbean"); see also Cantone & Co. v. Seafrigo, No. 07 Civ. 6602, 2009 WL 210682, at *2-4 (S.D.N.Y. Jan. 27, 2009).  Another common thread in these cases is the public nature of the principal/agent relationship. See Cantone, 2009 WL 210682, at *3-4 (agent was listed on defendant's bill of lading and website); Ivan Visin, 2008 WL 839714, at *3 (agent was listed on ship management agreement and on defendant's website); cf. TMT Bulk Co., 2009 WL 1119377, at *5 (noting no mention of the relationship on either company's website, and counting that factor against defendant).  Here,

9

Plaintiff's counsel has asserted, and Defendant does not

dispute, that the website of Fresh Del Monte Produce Inc. (the

parent company) does not list Del Monte as an agent for

Defendant. (Molina Opp. Dec. ¶¶ 5-8 & Ex. A.)  Indeed, the

website lists Defendant's American agent as E.F.I. Freight

Management, which has a Florida address. (Id. Ex. A.)  The

website does not so list the two entities Defendant now claims

as its agents, Del Monte and General Steamship.  As to the

latter, defense counsel did not attempt to rebut or gainsay the

statement by Plaintiff's counsel that General Steamship is known

in the industry as "independent agents who help the ship with

husbandry," rather than as a general agent for Defendant.

(Hearing Tr. at 13.)

     Third, even if Del Monte and/or General Steamship were

shown to be Defendant's agents, Defendant has not demonstrated

that either of these entities are themselves subject to general

personal jurisdiction in New Jersey.  Defendant's 2011 filing

with the New Jersey Department of Revenue lists an address for

Del Monte in Coral Gables, Florida. (Molina Supp. Dec. Ex. C.)

As to General Steamship, the Lutty Declaration offers only a

telephone number with a Philadelphia area code. See Siderbulk,

1992 WL 183575, at *2 ("[D]efendant has failed to meet its

burden of demonstrating that plaintiff could reasonably have

10

been expected to find this agent within the district.")  To be sure, it may well be that both Del Monte and General Steamship are in fact subject to general in personam jurisdiction in New Jersey.  But Defendant has the burden of proving this fact, and it has failed to do so.

## 2.   The Service of Process Prong

The Court has concluded that Defendant has not shown that it is subject to general personal jurisdiction in New Jersey. Its motion for vacatur must be denied on that basis alone. Nevertheless, Defendant has also failed to meet its burden of showing that it may be "found" in New Jersey for purposes of service of process.

Rule 4(h) of the Federal Rules of Civil Procedure provides for service of a corporation by delivering the summons and complaint to a "managing or general agent." See Fed. R. Civ. P. 4(h)(1)(B).  Defendant asserts that it has an agent in New Jersey who can accept process.  Specifically, the Lutty Declaration states that Del Monte employee Ernie Casper acts as the general manager and agent for Defendant, and is authorized to accept service of process for it. (Lutty Dec. ¶ 8; see also Def. Br. at 10.)

Defendant has fallen far short of substantiating this representation, and there are several independent reasons to

doubt it.  First, Defendant did not submit a sworn declaration
by Casper, much less call him to testify at the hearing.
Second, when questioned on this point at oral argument, defense
counsel admitted that he had been unable to coordinate with
Casper to prepare a declaration.[3] (Hearing Tr. at 3.)  Casper's
unavailability to assist Defendant in the litigation of its
motion does not exactly suggest a close professional
relationship, particularly in light of the fact that Casper
works for Del Monte and not for Defendant.  Third, and perhaps
most important, Defendant represented in its 2011 filing with
the New Jersey Department of Revenue that service of process
should be directed to Del Monte at an address in Coral Gables,
Florida. (Molina Supp. Dec. Ex. C.)  This belies Lutty's sworn
statement to the Court that Casper is Defendant's agent for
service of process in New Jersey.  For all of these reasons,
Defendant has not demonstrated that it may be found, through
Casper, for service of process in the state.

---

[3] Counsel blamed Casper's unavailability on the accelerated briefing
schedule. (Hearing Tr. at 3.)  This explanation is undermined by the
fact that it was Defendant who insisted on the truncated schedule.

### III. Conclusion

For the foregoing reasons, Defendant's motion to vacate the Rule B attachment is denied.  The conference scheduled for August 12, 2014 is adjourned sine die.  Counsel for Plaintiff is directed to notify the Court on October 1, 2014 regarding the status of the London arbitration.

**SO ORDERED.**

Dated:    New York, New York
          June 16, 2014

                                    John F. Keenan
                                    United States District Judge

13