USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 10, 2014

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
ALASKA REEFER MANAGEMENT LLC,   :
                                :
            <u>Plaintiff</u>,       :
                                :   No. 14 Civ. 3580 (JFK)
   -against-                    :   **OPINION & ORDER**
                                :
NETWORK SHIPPING LTD.,          :
                                :
            <u>Defendant</u>.       :
------------------------------X

Appearances

For Plaintiff Alaska Reefer Management LLC
    FREEHILL HOGAN & MAHAR, LLP
     By:  Don P. Murnane, Jr.
        Manuel A. Molina

For Defendant Network Shipping Limited
    CASEY & BARNETT, LLC
     By:  Martin F. Casey

For Garnishee JPMorgan Chase Bank, N.A.
    RAWLE & HENDERSON, LLP
     By:  Robert A. Fitch

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is a motion by Garnishee JPMorgan Chase Bank, N.A. ("Chase"), for the release of funds presently restrained under Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims ("Rule B"). For the reasons that follow, the Rule B attachment is vacated but the order of vacatur is stayed pending additional discovery.

### I. Background

    The Court assumes familiarity with the facts as set forth in its June 16, 2014 Opinion & Order. See <u>Alaska Reefer Mgmt.</u>

LLC v. Network Shipping Ltd., No. 14 Civ. 3580 (S.D.N.Y. Jun. 16, 2014) (ECF No. 24).  For purposes of this motion, the Court notes the following additional facts.  Plaintiff initiated the instant action in order to secure Defendant's assets under Rule B.  This Court granted the application on May 20, 2014.

Pursuant to the Court's order, Chase was first served with a writ of attachment by Plaintiff Alaska Reefer Management LLC ("Alaska Reefer") on May 21, 2014. (ECF No. 26 at 2.)  A search of Chase's records identified an account numbered XXXX3884 ("account 3884") maintained at Chase in the name of Defendant Network Shipping Ltd. ("Network Shipping"). (Id.)  The account is subject to an Automatic Dollar Transfer Service Agreement (the "ADT Agreement") between Chase, Network Shipping, and Del Monte International GMBH ("Del Monte"). (Id.)  The Agreement authorizes Chase to automatically transfer funds from Del Monte's London account into Network Shipping's New York account whenever the latter account is overdrawn. (ECF No. 30 at 20.)

At the time that the first writ was served, account 3884 did not have a positive balance and so there were no funds available to attach. (ECF No. 26 at 5.)  According to Chase, however, its personnel treated the writ as requiring a garnishment of future deposits and placed a hold on the account for an arbitrary amount of $9,999,999.99. (ECF No. 26 at 5.)  During the overnight hours of May 22 into May 23, 2014, Chase's

computer system interpreted this hold as an overdraft, which, pursuant to the terms of the ADT agreement, caused Chase to transfer money from Del Monte to Network Shipping in order to bring account 3884 to a zero balance. (Id. at 6.)  Both Chase and Alaska Reefer acknowledge that this transfer of funds from Del Monte to Network Shipping was caused by Chase's unilateral error. (ECF No. 26 at 12; ECF No. 30 at 12-13.)  Alaska Reefer again served Chase with a writ of attachment on May 23, 2014. (ECF No. 26 at 6.)  Because the hold was not an actual debit transaction, the automatic transfer caused Network Shipping's account to show a positive balance of at least the $3,290,287.38 that Plaintiff sought to attach. (Id.)  Accordingly, Chase restrained $3,290,287.38 of the transferred funds as required by the writ. (Id.)

In response to the restraint of funds by Chase, Network Shipping moved to vacate the attachment on the ground that it was amenable to suit in New Jersey, a convenient adjacent jurisdiction. (ECF No. 7.)  A hearing on the matter was held on June 5, 2014. On June 11, 2014, Chase belatedly filed an Answer to Alaska Reefer's Interrogatories, advising the Court that a bank error had caused the inadvertent transfer of funds from a nonparty to Network Shipping's New York account.  One day later, Network Shipping filed a motion for counter-security, in which it also raised Chase's error for the first time.  In response,

Alaska Reefer submitted a letter to the Court on June 16, 2014, contending that the attachment was proper despite Chase's alleged error.  That same day, the Court issued an order concluding that Network Shipping had not demonstrated that it could be found in New Jersey for service of process and denying Defendant's motion to vacate the attachment on that basis.[1] (ECF No. 24.)

On September 16, 2014, Chase, as garnishee, filed the instant motion seeking an order releasing funds being restrained by the bank pursuant to the Rule B attachment.  Chase now asserts that attachment is improper because the attached funds are not the property of Network Shipping and were only restrained after being inadvertently transferred into account 3884 by Chase.

## II. Discussion

### A. Legal Standard

Attachment in maritime actions is governed by Rules B and E of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  Fed. R. Civ. P. Supp. Rule (B), (E)(4)(f).  Under Rule B, "[i]f a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by

---

[1] The September 16 order noted, but did not address, Chase's admission that the attached funds had been erroneously transferred into Network Shipping's account.

4

Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property." Id. Supp. Rule B(1)(a).

Maritime attachment is valid if the plaintiff satisfies Rule B's filing and service requirements and can show (1) that it has a prima facie admiralty claim against the defendant; (2) that the defendant cannot be found within the district; (3) that the defendant's property may be found within the district; and (4) that there is no statutory or maritime law bar to the attachment. Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd., 722 F.3d 488, 493 (2d Cir. 2014); Padre Shipping, Inc. v. Young He Shipping, 553 F. Supp. 2d 328, 331 (S.D.N.Y. 2008); see also Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 69 (2d Cir. 2009) (noting that the res at issue must be the "property of the defendant at the moment the res is attached").  A garnishee has standing to challenge the validity of an attachment of property in its possession. See Drew Ameroid Intern. v. M/V Green Star, 681 F. Supp. 1056, 1058 (S.D.N.Y. 1988) (citing Fed. R. Civ. P. Supp. Rule (B)(3)(a)).

### B. Network Shipping's Attachable Interest

Through its previous order on Defendant Network Shipping's Motion to Vacate the Maritime Attachment, this Court has already determined that Plaintiff has presented a prima facie maritime claim against the Defendant, that Network Shipping cannot be

5

found in either the Southern District of New York or in a convenient adjacent jurisdiction, and that there is no statutory or maritime bar to the attachment. (ECF No. 24 at 5.)  Moreover, Chase and Alaska Reefer do not dispute that Network Shipping's bank account is itself "property" of the Defendant subject to attachment and that the funds were located in the district when attached.  Therefore, the sole issue presently before the Court is whether the funds being restrained by Chase are the property of Network Shipping.

Rule B provides for a broad definition of property and does not require actual ownership or title. See Padre Shipping, 553 F. Supp. 2d at 335.  Instead, case law indicates that attachment is proper so long as the defendant possesses a clear attachable interest in the property. See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 276 (2d Cir. 2002), overruled on other grounds by Shipping Corp. of India Ltd., 585 F.3d at 72.  As noted in the Court's May 20, 2014 order, an attachable interest exists where assets are being held "for the benefit of" the Defendant or "in its name." (ECF No. 30 at 20.)

Accordingly, Alaska Reefer contends that attachment of the subject funds was proper because (1) the transfer was made in the name of Network Shipping, (2) the funds were directed to Network Shipping's account for its benefit, and (3) the funds were located in Network Shipping's account when attached. (ECF

6

No. 30 at 5-6.) Moreover, Defendant asserts that Chase's admitted error in causing the transfer does not negate the fact that the transfer was made under the ADT Agreement—a "financial vehicle created for Network's benefit." (Id. at 20, 22.) As a result, Alaska Reefer argues that any transfer of funds under the ADT Agreement—even if by error—gives rise to an attachable interest.[2] (Id. at 21.)

### 1. The ADT Agreement

Under the ADT Agreement, Chase is authorized to automatically transfer funds from Del Monte's London account to Network Shipping's New York account whenever the latter account is overdrawn. (Id. at 20.) Thus, when properly triggered, the automatic transfer of funds under the Agreement likely would be "for the benefit of" Network Shipping and attachable, because it would cure the overdraft of Network Shipping's account. See Essar Int'l Ltd. v. Martrade Gulf Logistics, FZCO, No. 07 Civ. 3439, 2007 WL 2456629, at *2 (S.D.N.Y. Aug. 23, 2007) (attaching funds belonging to a nonparty that had been transferred for the benefit of the debtor); see also Hanjin Overseas Bulk Ltd. v. CPM Corp. Ltd., No. 08 Civ. 9516, 2008 WL 5429640, at *3 (S.D.N.Y. Dec. 22, 2008) (allowing attachment of funds

---

[2] As noted by both the Defendant and this Court, Chase's reply memorandum (ECF No. 31) was filed on October 20, 2014—thirteen days after it was due. Consequently, the Court disregards the reply, as untimely, and does not address it in considering whether Chase's admitted error invalidates attachment in this case.

transferred between third parties where the transfer was made for the benefit of the defendant).

However, while the types of property interests subject to attachment are broadly defined and actual ownership is not required, a defendant's interest in such property must be clear. See Nanyuan Shipping Co. Ltd. v. Marimed Agencies UK, 595 F. Supp. 2d 314, 317 n.3 (S.D.N.Y. 2009) (remarking that a defendant's mere temporary charge over property that at all times belonged to another may be insufficient to establish an attachable property interest); ST Shipping and Transp., Inc. v. Golden Fleece Maritime Inc., No. 07 Civ. 11147, 2008 WL 4178189, at *4 (S.D.N.Y. 2008) (noting that the "[m]ere labeling of a party as the recipient of [a transfer of funds] is insufficient to establish a property interest in the funds").  Here, even assuming that the transfer of funds under the ADT Agreement would ordinarily be for the benefit of Network Shipping, it does not automatically follow that Defendant has a clear interest in funds transferred into its account due to a bank error.

### 2. Chase's Admitted Error

Alaska Reefer contends that, under Second Circuit precedent, a bank's unilateral error does not invalidate attachment. See Winter Storm, 310 F.3d at 266-67, 274 n.7; Maersk Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 528-29 (S.D.N.Y. 2006).  But the cases that Plaintiff cites indicate only that a bank's erroneous

8

restraint of funds within the district does not nullify their attachment, so long as the funds are property belonging to the defendant and are in the bank's possession at the time that process of maritime attachment is served. See Winter Storm, 310 F.3d at 274 n.7 (addressing funds mistakenly restrained in a defendant's account due to a stop order by the bank and concluding that the plaintiff's subsequent attachment of those funds was valid, because the funds belonged to the defendant and had been in the bank's possession when the processes of attachment was served); Maersk Inc., 443 F. Supp. 2d at 528-29 (concluding that the attachment was valid because, "as in Winter Storm, the Plaintiffs served the Process of Attachment when [the Defendant's] funds were in the bank's possession").  These cases therefore do not disrupt the central requirement that property subject to attachment under Rule B must be "property of the defendant at the moment the res is attached"; nor do they suggest that a bank error can give rise to an attachable interest. See Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 69 (2d Cir. 2009) (emphasis added); see also Egyptian Navigation Co. v. Baker Inv. Corp., No. 08 Civ. 2080, 2008 WL 1748456, at *6 (S.D.N.Y. 2008).

Alaska Reefer also points to cases from this district holding that a defendant has a clear attachable interest in funds "directed to or from" its account or transferred for its benefit. See, e.g., Padre Shipping, Inc., 553 F. Supp. 2d at

9

334-35. But these cases are similarly distinguishable because they involve funds intentionally transferred—and thereby made attachable—by a party with an ownership interest in the attached property. See, e.g., id. (concluding that the defendant had an attachable interest in funds that it was allegedly holding as agent for third-party owners, where the funds had been intentionally directed to or from the defendant's account by those third parties); Chiquita Int'l Ltd. v. MV Bosse, 518 F. Supp. 2d 589, 594 (S.D.N.Y. 2007) (finding that a defendant had an attachable interest in funds "directed to or from [its] bank accounts," where the defendant asserted that the transfer had been made by nonparties for an "intended business purpose"); Essar Int'l Ltd., 2007 WL 2456629, at *2 (allowing the attachment of funds intentionally transferred between two third parties for the defendant's benefit and for the purpose of avoiding the attachment order.)

By comparison, case law in this district suggests that where a defendant's attachable interest in property exists as the result of a clerical error, that interest is insufficient to sustain attachment. See Hawknet Ltd. v. Overseas Shipping Agencies, No. 07 Civ. 5912, 2009 WL 1309854, at *5 (S.D.N.Y. May 6, 2009) (agreeing that "misidentified funds that were attached due to a clerical error should be released" where the bank acknowledged that the misidentification was due to a clerical

error); Egyptian Navigation Co., 2008 WL 1748456, at *6 (rejecting "the proposition that an entity with no interest in an [electronic fund transfer] . . . somehow gains such an interest when the party initiating the [transfer] mistakenly names that entity as the transaction's beneficiary").

Here, Chase has unambiguously acknowledged that the transfer of the attached funds under the ADT Agreement from Del Monte to Network Shipping was caused by the bank's unilateral error. (ECF No. 26 at 5-6.)  This disclosure is not contested by Plaintiff, who instead cites Chase's admission that it "unilaterally made a series of mistakes which ultimately placed funds into Network Shipping's account maintained in the District" as further support for upholding attachment. (ECF No. 30 at 12.)  Alaska Reefer has therefore failed to demonstrate that Network Shipping has a clear interest in the attached funds, because the factors that Plaintiff points to in support of attachment—the transfer of funds in Network Shipping's name and for its benefit and the placement of those funds within Network Shipping's account in the district at the time of attachment—are all the direct result of Chase's unilateral error. (ECF No. 30 at 5-6, 22.)  Consequently, in light of Chase's admission, Plaintiff has not met its burden of demonstrating that Network Shipping possesses a clear attachable interest in the subject funds.

**C. Relief and Discovery**

Having determined that Chase's unilateral error invalidates Network Shipping's alleged attachable interest in the funds currently restrained by Chase, the Court must also address Plaintiff's request that it be allowed to conduct additional discovery of Network Shipping, Del Monte, and Chase concerning the transfer at issue and the contractual arrangements governing the Del Monte and Network Shipping accounts, in order to determine whether another basis for establishing an attachable interest exists. (ECF No. 30 at 22 n.3.)  Given Chase's delay in responding to the interrogatories and in notifying Plaintiff of its error, and in light of the contractual relationship in existence between Del Monte and Network Shipping, allowing further discovery before permitting the funds to be released is appropriate.  Moreover, this appears to be the fairest course of action because it will prevent the funds from escaping plaintiff's reach. See Hawknet Ltd. v. Overseas Shipping Agencies, No. 07 Civ. 5912, 2008 WL 1944817, at *5 & n.10 (S.D.N.Y. Apr. 29, 2008) (vacating attachment but staying the release of the attached funds and noting that, "because the attached funds were transferred by a wire containing the address and name of [a defendant] . . . this Court has "a sufficient basis to maintain control over the funds").

In order to ensure that the funds are not sequestered for an excessive period of time, however, the parties are to complete discovery on this issue within 60 days. Given the disclosures that Chase has already made regarding the transfer of funds from Del Monte to Network Shipping, this time frame should be sufficient to address any remaining questions.

### III. Conclusion

For the foregoing reasons, the Rule B attachment of $3,290,287.38 in funds currently restrained by Garnishee JP Morgan Chase Bank, N.A., is vacated. The order of vacatur is stayed for 60 days, however, to allow Plaintiff an opportunity to conduct additional discovery into the transfer of the attached funds and the contractual arrangements between Del Monte and Network Shipping.

**SO ORDERED.**

Dated:   New York, New York
         November 10, 2014

_____
John F. Keenan
United States District Judge